IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>          Plaintiff,<br><br>    vs.<br><br>WERNER ENTERPRISES, INC.,<br><br>          Defendant.<br><br>    and<br><br>ANDREW DEUSCHLE<br><br>          Intervenor Plaintiff,<br><br>    vs.<br><br>WERNER ENTERPRISES, INC.,<br><br>          Defendant. | **8:18CV329**<br><br>**ORDER** |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>          Plaintiff,<br><br>    vs.<br><br>DRIVERS MANAGEMENT, LLC, and WERNER ENTERPRISES, INC.,<br><br>          Defendants. | **8:18CV462** |

      This matter is before the Court on the motion of the Equal Employment Opportunity Commission ("EEOC") and Intervenor Andrew Deuschle ("Deuschle") (collectively, "Plaintiffs") to Compel and for Additional Discovery (Filing No. 213), as well as Defendants' Objections and

Motion to Strike Potions of the Declaration of Grant Doty (Filing No. 220). For the reasons explained below, the motions will be denied.

**BACKGROUND**

These cases, which were consolidated for purposes of discovery, arise from allegations that Werner Enterprises, Inc. ("Werner") violated the Americans with Disabilities Act ("ADA") by not hiring Deuschle and Victor Robinson ("Robinson") because they are deaf and, additionally, by requiring job applicants to answer a disability-related question.[1] (Filing No. 112.) The Amended Complaint further alleges that Werner violated the ADA by adopting a facially discriminatory policy that illegally classified deaf truck driver applicants and those Werner suspected as having a hearing problem.

In early 2019, the EEOC and Deuschle served Werner with numerous discovery requests seeking information pertaining to other deaf or hard of hearing job applicants. (Filing No. 215.) Werner objected to the requests as being overly broad, unduly burdensome, and not proportional to the needs of the case. Werner advised that it received thousands of job applications per week and did not maintain a list of all applicants who hold hearing exemptions or are deaf. Werner also stated that its database could only be searched by name or social security number. According to Werner, later in 2019, Werner's counsel worked with Werner representatives to determine if Werner could identify documents responsive to narrowed discovery requests regarding other applicants. During that process, Werner identified 14 deaf or hard of hearing applicants. Werner's counsel then requested that Werner representatives search those names, which Werner claims it did, in approximately September of 2019.

In or around November of 2019, the parties reached a compromise regarding Plaintiffs' discovery requests. Pursuant to the compromise, Werner agreed to search for the names of approximately 686 hearing exemption holders from a FMCSA List provided by Deuschle's counsel. The parties agreed that where a match existed in Werner's system indicating the individual applied to Werner, Werner would produce (1) the application; (2) documentation from Werner's application system related to the application; and (3) a statement of the status of the

---

[1] For ease in identification, the filing numbers referenced in this Order are taken from Case No. 8:18CV329.

applicant. The parties also agreed that if there was a match for a name with numerous results and Werner could not determine which applicant with that name had the exemption or was deaf, counsel would confer about the issue. Werner employees then conducted a manual search for the names on the FMCSA List. In January of 2020, Werner produced responsive documents related to approximately 80 drivers found during that search.

In or about March and April, 2020, Werner also produced "audit trail data" for Deuschle and Robinson. "Audit trail data" is described as a record of "fingerprints" showing the time and date an applicant's file was accessed. Werner's attorneys represent that they were not aware of the existence of audit trail data until around that time. In June, 2020, Werner responded to additional interrogatories and requests for production regarding audit trail data.

On August 14, 2020, the Court held a telephone conference with counsel regarding a discovery dispute. (Filing No. 150.) Following the conference, the Court ordered Werner to perform an ESI search of its databases using search terms provided by Plaintiffs. The Court also ruled that Plaintiffs could depose a Werner witness regarding the content of the audit trail data.[2] In the fall of 2020, Werner conducted a search of its email system using 19 search terms provided by Plaintiffs. Werner also used those terms to search 138 of its other databases.

On March 1, 2021, the EEOC served additional requests for production, seeking specific database search results. The EEOC requested (1) audit trail data; or (2) for some individuals, audit trail data and the individual's application. Werner objected to the requests on various grounds, including that they were not proportional to the needs of the case. Despite the objections, counsel continued to confer to resolve the dispute pertaining to the requests. Werner's counsel ultimately proposed that "[a]s a compromise to resolve the parties' dispute" Werner would "agree to search for and (where possible) retrieve and produce the documents identified in the 71 requests set forth in [Plaintiff's counsel's correspondence]." (Filing No. 222-2.) Werner subsequently produced additional documents for the 71 requests. This production occurred in late April and May, 2021 and included audit trail data for approximately 70 drivers.

---

[2] To the Court's knowledge, Plaintiffs have not yet taken this deposition. However, on July 22, 2021, the EEOC filed a notice of 30(b)(6) deposition of Defendants which identified audit trail data as a deposition topic. (Filing No 196.) The notice stated the deposition was to occur on August 4, 2021.

The Court held a telephone conference with counsel on April 14, 2021. During the call, counsel informed the Court that the parties had reached a compromise on the remaining documents and were ready to resume depositions. The Court entered the Fifth Amended Final Progression Order on April 28, 2021. (Filing No. 178.) The parties thereafter scheduled depositions for June 4, 2021; June 22, 2021; and July 14, 2021.

On May 20, 2021, counsel for the EEOC contacted Werner's counsel and asked for additional documents. The EEOC requested audit trail data for 69 additional drivers, as well as job application files for 23 individuals. Counsel for the EEOC also asked Werner to confirm that the documents produced in January of 2020 were the complete and full contents of the driver application files. Counsel conferred by telephone regarding this matter on May 25, 2021, and Werner agreed to produce additional applications for certain drivers but would not agree to produce audit trail data for more drivers.

On July 13, 2021, the Court held a telephone conference with counsel regarding this document production dispute. (Filing No. 186.) Upon hearing the matter, the Court allowed the EEOC to serve additional discovery requests regarding 6 individuals. The Court rejected Plaintiffs' request to compel Werner to produce audit trail data. (Filing No. 187.) The Court denied the request for audit trail data because the parties had not agreed that Werner would produce this information. The Court also denied Plaintiffs' request to compel production of documents for individuals on the FMCSA List for whom the search produced multiple hits because Plaintiffs' counsel failed to raise this issue at an earlier time.

Werner's counsel contends that following the telephone conference with the Court on July 13, 2021, Werner discovered that some documents from the December 2019 and January 2020 search had inadvertently not been produced. Werner represents that some documents were not pulled due to human error during the manual searches for the names on the FMCSA List. Therefore, Werner conducted another search in August of 2021 for the drivers on the FMCSA List for whom Werner had previously produced documents. Werner supplemented its production on or about August 27, 2021.

4

In September of 2021, counsel contacted the Court regarding a discovery dispute dealing with the sufficiency of Werner's document production, production of audit trail data, and production of documents from the "messages" tab on Werner's recruiting system. Werner opposed production of these documents and argued the Court had previously refused to order production of audit trail data and that the messages tab in its recruiting application does not contain documents. Werner stated that the messages tab is just the system's internal method of showing that an action has been taken on an applicant's application. Following a telephone call with the Court regarding the matter on October 1, 2021, the Court granted Plaintiffs leave to file a motion to compel. The instant motion followed. In response to the motion to compel, Defendants filed a motion to strike certain information contained in the Declaration of the EEOC's counsel, Grant Doty, which Plaintiffs offered in support of their motion to compel. The motion to strike is also now before the Court.

## DISCUSSION

These motions arise from an ongoing discovery dispute regarding Werner's responses to Plaintiffs' discovery requests, particularly those requests seeking information about other applicants for truck driving positions with Werner who are deaf or hold hearing exemptions. The Court has held several telephone conferences with the parties regarding this matter. However, citing ongoing concerns regarding the completeness of Werner's document production, Plaintiffs now request that the Court (1) compel Werner to respond to Plaintiffs' initial discovery requests, including production of all information and documents related to the applications and outcomes for all applicants who are deaf, hard of hearing, use a hearing aid, and/or possess a hearing exemption, not just those on the FMCSA List; (2) order Werner to produce audit trail data for all applicants who are deaf, hard of hearing, use a hearing aid, and/or possess a hearing exemption; (3) permit Plaintiffs to conduct additional discovery designed to confirm the completeness of Werner's discovery responses; (4) compel Werner to produce all "messages" regarding the recruiting and applications for all individuals who are deaf, hard of hearing, use a hearing aid, and/or possess a hearing exemption, including both production of audit trail data for those individuals and screenshots of the messages tab on the dashboard of Werner's application system; and (5) allow Plaintiffs to conduct additional discovery to ascertain the scope of ESI that should

have been preserved and what has been lost because of Werner's alleged failure to preserve it. These requests will all be denied.

1. **Discovery Pertaining to Other Applicants, Audit Trail Data & Messages**

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Considerations in assessing proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Rule 26 "is to be construed broadly and encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Hodges v. Pfizer, Inc.*, Civ. No. 14-4855-ADM/TNL, 2016 WL 1222229, at *2 (D. Minn. March 28, 2016) (quotation omitted). However, the scope of discovery is not unlimited. A court must limit the frequency or extent of discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if it is "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b).

Plaintiffs request that the Court compel Werner to respond to Plaintiffs' initial discovery requests, to include production of full application files for all applicants who are deaf, hard of hearing, use a hearing aid, and/or possess a hearing exemption—not just those applicants identified on the FMCSA List. Plaintiffs also request that the Court order Werner to produce audit trail data for all applicants who are deaf, hard of hearing, use a hearing aid, and/or possess a hearing exemption. Additionally, Plaintiffs want the Court to compel Werner to produce all "messages" regarding recruiting and the applications for these individuals, including screenshots of the messages tab of the dashboard of Werner's application system. Plaintiffs argue production of audit trail data and messages is necessary because it is the only way Plaintiffs can confirm or refute Werner's claim that it has produced all responsive documents. Having considered the matter, the

Court will deny Plaintiffs' requests because the discovery sought is (1) outside the scope of the parties' discovery compromises; (2) marginally relevant; and/or (3) not proportional to the needs of the case.

In late 2019, the parties reached a compromise regarding Werner's objections to Plaintiffs' initial discovery requests. Pursuant to the compromise, Werner agreed to search for *hundreds* of names of hearing exemption holders from a list provided by Deuschle's counsel and then to produce specific information about those individuals. Werner did this and produced responsive documents in January of 2020. When another discovery dispute arose in approximately March, 2021, the parties reached another compromise, which resulted in Werner producing audit trail data for around 70 drivers. On April 14, 2021, the parties informed the Court they had reached an agreement regarding remaining document production. Consequently, the Court entered the Fifth Amended Final Progression Order (Filing No. 178). However, the very next month, Plaintiffs were again dissatisfied with production and requested audit trail data for even more drivers.

Plaintiffs argue production of additional documents should be compelled because they thought they had the full contents of files for individuals on the FMCSA List until they received audit trail data from Werner on April 30, 2021. Plaintiffs argue this audit trail data shows that Werner and its counsel have not been truthful about Werner's ability to search for documents. Plaintiffs maintain the audit trail data reveals that Werner accessed files of deaf and hard of hearing applicants in September of 2019—while the first discovery compromise was being negotiated. Plaintiffs claim this audit trail data shows that documents were not produced from several of the files that Werner accessed in September of 2019, and that certain other documents were not produced for some individuals.

The Court will not order production of additional documents, including audit trail data, messages, or screenshots of the messages tab.[3] Plaintiffs have been aware of the existence of audit trail data since approximately April of 2020. One year later, after two separate discovery compromises and the entry of a revised progression order based on statements counsel made

---

[3] Werner represents that the "messages" Plaintiffs seek are just a subset of audit trail data and that the "messages" tab on Werner's recruiting system does not actually contain documents. Plaintiffs have not presented any reliable evidence refuting this assertion.

7

regarding document production, Plaintiffs seek even more audit trail data. At this point, Plaintiffs' request for additional audit trail data and messages is not proportional to the needs to the case.

Further, the Court is not convinced that the already-produced audit trail data shows Werner intentionally withheld documents or that production remains incomplete. Werner has presented perfectly logical explanations for any deficiencies supposedly reflected in the audit trail data. For example, Werner has explained that certain files were accessed in September 2019 because Werner was investigating ways to search its databases so it could provide responsive documents to a narrowed set of discovery requests. Frankly, it appears Plaintiffs' claimed deficiencies are entirely speculative and rely upon assumptions of what is reflected in the document production and audit trail data. The Court previously ruled that Plaintiffs could depose a Werner witness regarding audit trail data for assistance in interpreting its meaning. Plaintiffs may still do so. However, the Court is not going to order production of additional audit trail data and messages.

Moreover, much of the additional discovery sought is of marginal relevance to the issues in this litigation. These cases arise from allegations that Werner violated the ADA by not hiring Deuschle and Robinson because they are deaf. The Amended Complaint also alleges that Werner violated the ADA by requiring applicants to answer a disability-related question and by adopting a facially discriminatory policy that illegally classified hearing-impaired applicants. This is not a class action lawsuit or a pattern-and-practice suit alleging a pattern of discriminatory decision-making. Werner admits it did not hire Deuschle and Robinson because Werner could not safely accommodate their disability in a way that would enable Deuschle and Robinson to complete Werner's training program. Werner also does not dispute that it has not hired a driver with an FMCSA exemption from the hearing requirement for a placement driver position. It is unclear how thousands of pages of discovery regarding other applicants will benefit Plaintiffs in presenting their case. Plaintiffs may not use discovery in this suit "as a fishing expedition to uncover more violations." *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 675 (8th Cir. 2012).

Finally, even if relevant, the additional discovery sought is not proportionate to the needs of this case. To date, Werner has responded or objected to hundreds of requests for production of documents and hundreds of interrogatories. (Filing No. 222-2.) Werner has performed a manual search for the names of approximately 700 deaf drivers from a list provided by Deuschle's counsel,

8

conducted a search of its email using search terms provided by the EEOC, and searched 138 other databases using search terms provided by Plaintiffs. It has also re-run searches upon learning that certain documents had not been produced. (Filing No. 222-2.) Werner represents that it has produced over 12,000 pages of database search results and, as of March 31, 2021, its IT department had spent more than 600 hours on discovery. (Filing No. 222-2.) Considering, among other things, the value of the sought-after discovery in resolving the issues in this case, the Court finds the burden and expense associated with the discovery proposed by Plaintiffs outweighs any benefit.

**2. Discovery-on-Discovery and Document Preservation**

Plaintiffs also ask that the Court permit Plaintiffs to conduct discovery designed to confirm the completeness of Werner's discovery responses and ascertain the scope of electronically stored information that should have been preserved and what has been lost because of Werner's alleged failure to preserve it. Plaintiffs speculate that Werner has purposefully failed to produce and/or destroyed evidence, pointing to information purportedly gleaned from audit trail data. For example, Plaintiffs argue that changes to social security numbers of deaf or hard of hearing applicants on Werner's application system indicates Werner has concealed or destroyed evidence. However, Werner explained that a social security number is required to add an applicant to its recruiting system and that driver applications received through a third-party vendor or website generally do not contain the applicant's social security number. Therefore, in those cases, a temporary placeholder number is assigned to the applicant so the application can be added to the system, which is later corrected when Werner obtains the applicant's correct social security number. Despite this logical explanation, Plaintiffs are dissatisfied with the response.

The behavior of Werner's counsel and representatives does not suggest to the Court that Werner is trying to withhold, hide, or destroy responsive documents. Quite the contrary. Following the telephone conference with the Court on July 13, 2021, Werner's counsel learned that certain documents had not been produced during Werner's first manual search for documents in December 2019 and January 2020. To resolve the matter, Werner re-ran the search for the drivers on the FMCSA List for whom Werner previously produced documents and then supplemented its production. Based upon the sheer amount of discovery that Plaintiffs have requested in this case, it is entirely reasonable that some documents were accidently overlooked

9

or missed during the initial production. From the Court's perspective, Werner has bent over backwards to accommodate Plaintiffs' requests or to reach compromises during discovery. Still, nothing short of giving Plaintiffs everything they want seems to satisfy them. The Court is unpersuaded that the "discovery about discovery" Plaintiffs seek is warranted in this case.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Compel and for Additional Discovery (Case No. 8:18CV329, Filing No. 213; Case No. 8:18CV462, Filing No. 192) is denied. Defendants' Objections and Motion to Strike Potions of the Declaration of Grant Doty (Case No. 8:18CV329, Filing No. 220); Case No. 8:18CV462, Filing No. 199) is denied as moot. By 12:00 p.m. on April 8, 2022, the parties shall confer and submit proposed revised deposition, summary judgment, and Daubert deadlines to bazis@ned.uscourts.gov.

Dated this 1st day of April, 2022.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge