## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

             Plaintiff,

and

ANDREW DEUSCHLE,

             Plaintiff-Intervenor,

    v.

WERNER ENTERPRISES, INC.,

             Defendant.

**CASE NO: 8:18-CV-329**

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTIONS IN LIMINE

In response to Defendant's Brief in Opposition to Plaintiffs' Combined Motions *in Limine* (Doc. 307), Plaintiff EEOC and Plaintiff-Intervenor Andrew Deuschle provide the Court the following arguments and citations:

**1.      Whether employment with Defendant is "at will" is irrelevant.**

Of course no employee "has a right" to employment with Defendant. Plaintiffs' motion does not argue otherwise. But the issue for trial is, as Defendant describes it, whether Deuschle could "safely complete the observed over-the-road driving portion of Werner's placement driver program, an essential function of the position to which he applied[.]" Def. Resp. to Pl. Mot. in Limine, Doc. 307 at 3. Whether Mr. Deuschle's employment would have been "at will" is irrelevant, and Defendant's response does nothing to explain how it might be otherwise.

The Court should therefore grant this motion.

2.   **Failure to mitigate evidence beyond the back-pay period is irrelevant, and Defendant does not contest the motion.**

Plaintiff moved to exclude failure to mitigate or offset evidence concerning 2019 through the present—beyond the period for which Mr. Deuschle seeks backpay damages. Rather than respond, Defendant reiterates its own argument that backpay is not for the jury. Thus, should the Court disagree with Defendant's position on backpay, Defendant has conceded this motion.

3.   **Evidence of job performance or reasons for leaving after the backpay period are irrelevant, and proof that Mr. Deuschle was a "qualified individual" under the Act does not change the analysis.**

Plaintiff moved to exclude evidence of performance issues or reasons for separation from employment *after* the backpay period of April 2015 through the end of 2018. Defendant fails to meaningfully respond to the motion. Instead, it points to evidence of Mr. Deuschle's qualifications *within* the backpay period to argue against the motion. But the exhibits Defendant points to go to a different issue: whether Mr. Deuschle was a "qualified individual" under the Act, that is whether he could perform the essential functions of the job with or without accommodation.

The Court should therefore grant this motion.

4.   **Defendant agrees evidence or argument regarding government benefits should be excluded.**

Plaintiff moved to exclude evidence, argument, or suggestion regarding any application or receipt of government benefits. Defendant does not oppose the motion, and the Court should therefore grant it.

5.   **Defendant should be prohibited from offering a "post hoc rationalization for its actions."**

Throughout this litigation, Defendant has asserted various reasons for its refusal to hire Mr. Deuschle. To be clear, Plaintiffs are not attempting to exclude evidence about all these

reasons. Instead, Plaintiffs seek only to exclude any *new* rationale offered after the close of discovery. Allowing such new arguments would result in trial by ambush, because Plaintiffs would be without any opportunity to prepare a response.

Defendant is prohibited from inventing a "post hoc rationalization for its actions at the rebuttal stage of the case." *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 570 (8th Cir. 2007) (denying summary judgment and quoting *Sabree v. United Bhd. Of Carpenters & Joiners Local No. 33*, 921 F.2d 396, 403 (1st Cir.1990)). Such evidence or argument would be particularly improper in light of the fact that none of Defendant's witnesses can testify with certainty regarding who declined Mr. Deuschle, or why they took that action.

For these reasons, the Court should grant this motion.

### 6.   Defendant should not be allowed to cavil about deaf driver safety and rely on cherry-picked, anecdotal incidents to justify its discriminatory policy.

Plaintiff moved to exclude video evidence of drivers other than Mr. Deuschle to prevent the precise arguments Defendant makes in response to the motion. Defendant argues it should be able to point to an instance in which it claims Victor Robinson did not hear an oncoming siren.

Werner's training program is at issue, not the safety of deaf drivers generally. Indeed, "the only part of its truck driving job that Werner claims Andrew Deuschle could not perform . . . is the trainer-observed over-the-road component of its student driver program." Pretrial Order, Doc. 298, p.3. Now, though, Werner admits it wants to argue that because Robinson did not immediately detect an emergency vehicle, deaf drivers are unsafe. But Werner does not contest the safety of deaf drivers generally, and how deaf drivers perceive emergency vehicles is unrelated to in-cab communication between trainers and drivers. If it is an issue at all, it is an issue generally applicable to all deaf drivers and unrelated to Werner's training. The argument

could thus serve only one purpose: to prejudice and scare the jury about an issue not before the Court.

Defendant's objection is based on two falsehoods. First, and contrary to Defendant's assertion, the videos that are the subject of Plaintiffs' Motion *in Limine* No. 6 do not depict actual over-the-road training. In its objection, Defendant notes the videos are relevant because they show Werner's training program; however, the videos of Victor Robinson do not show that at all. The trainer in the videos is not a Werner trainer, nor is Robinson undergoing any part of the Werner training program. Rather, the videos depict Plaintiffs' own expert Don Olds mock-training Robinson. Defendant perhaps confuses the December 2019 inspection featuring Robinson with the January 2020 inspection conducted by Dr. Arndt as of part of Werner's training program. The January 2020 inspection did not involve filming Robinson, but instead filmed a Werner trainer and trainee.

Moreover, Defendant notes, "[t]he EEOC argued having their expert observe Werner's over-the-road training program would provide information from which their expert could 'assess what accommodations may be made.'" Film of Werner's training program, Defendant argues, is "directly relevant to [Dr. Arndt's] opinion that accommodation could have been made to enable Deuschle to safely perform the over-the-road portion of training." Doc. 307 at 7-8. This refers to the January 2020 inspection, with the Werner trainer and trainee, and not anything involving Robinson. To be sure, Plaintiffs do not challenge the admission of videos stemming from the January 2020 inspection and have in fact proposed videos from this inspection as Plaintiffs' Proposed Trial Exhibit 128. Further, the parties did not engage in a protracted fight over filming Robinson. The videos were filmed voluntarily by Plaintiffs' own expert and client.

Second, Defendant's objection misrepresents the videos in question. Defendant argues that it should be able to use the videos at issue to show that Robinson honked at another car before he noticed an emergency vehicle. However, this is not the case. What Defendant and its declarant leave out is that the video clearly demonstrates Olds directing Robinson to honk the horn because he had also not heard the siren from the emergency vehicle. The video then shows Robinson following this instruction before Olds and Robinson both detect the emergency vehicle. Thus, this video depicts an instance in which both a hearing and deaf driver did not hear the siren of an emergency vehicle. This again relates to an issue generally applicable to deaf driving and all driving in general, and admitting this evidence would prejudice and confuse the jury regarding an issue not before them.

Finally, as explained in Plaintiffs' reply to Defendant's objection to Motion *in Limine* No. 18, *infra*, Plaintiffs' expert's reliance on these videos does not mean they are admissible for any purpose. Rather, Defendant is limited to using the videos to impeach Plaintiffs' expert and cross examine him regarding the factual basis of his opinion.

For these reasons, the Court should grant the motion to exclude all videos of Victor Robinson driving.

### 7.    Defendant agrees evidence and argument regarding settlement negotiations or discussions should be excluded.

Plaintiff moved to exclude evidence, argument, or suggestion regarding any settlement discussions or negotiations. Defendant does not oppose the motion, and the Court should therefore grant it.

### 8.    Defendant agrees that evidence or argument in support of any defense to liability not set forth in the Court's Pretrial Conference Order and any suggestion that the facts cited in Plaintiffs' complaints (including any amended complaint) are the only facts in support of their claim should be excluded.

Plaintiff moved to exclude evidence, argument, or suggestion regarding any defense to liability not set forth in the Court's Pretrial Conference Order and any suggestion that the facts cited in Plaintiffs' complaints (including any amended complaint) are the only facts in support of their claim. Defendant does not oppose the motion, and the Court should therefore grant it.

**9.  The financial consequences to Werner of any potential accident, real or hypothetical, is unsupported by the evidence and irrelevant.**

Accidents involving Werner vehicles undoubtedly have financial consequences. But Werner's liability for them, and the amount, are speculative in the abstract, and Werner has not identified a single accident it intends to discuss at trial. The Court should thus prohibit the company from inflaming the sentiments of the jury and argue, as it did on summary judgment, that any accident involving a deaf driver would expose Werner to "substantially liability."

**10.  Defendant agrees that statements or arguments in the presence of the jury regarding statutory caps on compensatory and punitive damages should be excluded.**

Plaintiff moved to exclude statements or arguments in the presence of the jury regarding statutory caps on compensatory and punitive damages. Defendant does not oppose the motion, and the Court should therefore grant it.

**11.  The Court resolved Defendant's direct threat and undue hardship defense on summary judgment; evidence in support of those defenses is therefore irrelevant.**

Plaintiffs ask the Court to exclude any evidence or argument regarding the direct threat and undue hardship defenses the Court disposed of on summary judgment. The motion does not seek to prevent Werner from offering evidence or arguments regarding the safety of proposed reasonable accommodations—evidence which relates to whether Mr. Deuschle was a "qualified individual" under the Act. Instead, the motion recognizes the routine practice of excluding

6

evidence or argument regarding a defense or claim disposed of at the summary judgment stage. *See Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 145 (N.D. Iowa 2003) (granting motion to exclude defense previously disposed of at summary judgment); *Smith v. Tenet Healthsystem SL, Inc.*, No. 4:02CV512-DJS, 2004 WL 6045798 at *2 (E.D. Mo. Feb. 26, 2004) (granting motion to exclude claim disposed of at summary judgment); *Woodmont Co. v. LaSalle Shopping Ctr., LLC*, No. 1:17-CV-00073, 2021 WL 9666526 at *5 (D.N.D. Apr. 12, 2021) (granting motion to exclude expert's opinions regarding claims dismissed on summary judgment because opinions regarding dismissed claims are moot).

To the extent Plaintiffs' trial exhibits mention direct threat and undue hardship, namely Defendant's responses to Plaintiffs' interrogatories, those exhibits will be redacted to eliminate any reference to these terms. Further, Plaintiffs anticipate admitting interrogatory answers individually such that any responses regarding Defendant's former defenses will not be introduced. For these reasons, Plaintiffs' Motion should be granted.

### 12. The Court should exclude evidence of any particular trucking accident because Werner has failed to identify any.

Plaintiff moved to exclude evidence of specific, actual trucking accidents because Werner has not identified any. It could also create mini-trials on the facts of any accident. Werner does not appear to oppose the motion as written; instead, Werner argues it should be allowed to discuss its concerns with safety generally. But the response does not squarely respond to Plaintiffs' position.

If Defendant intended to rely on a particular accident, that actually occurred, Defendant had an obligation to say so. Defendant's disclosures, interrogatory answers, and 30(b)(6) designees were silent on the issue. The Court should therefore disallow the evidence now.

13. **Evidence or argument that Andrew Deuschle did not complete training at C.R. England should be excluded.**

Defendant should not be allowed to invent arguments and suggest theories to the jury without any basis in fact. For instance, Defendant argues that Plaintiffs do not cite evidence suggesting Deuschle did complete C.R. England's training program. But Defendant has that evidence in its possession: Mr. Deuschle's C.R. England records which Defendant subpoenaed during litigation. Defendant even plans to use them with its Trial Exhibit 245.

On page 111 of Defendant's Trial Exhibit 245 is a final road assessment, making clear Mr. Deuschle passed training. In addition, pages 38, 55, 100, 102, and 108 of the same exhibit show Mr. Deuschle's completion of different road assessments during training. And Page 117 of shows "approved for upgrade" signed by both Mr. Deuschle and his trainer/mentor. At best, Defendant's argument is post-hoc speculation since Werner has no contemporaneous documentation or witness memory as to why the company rejected Mr. Deuschle's application. So rather than squarely deal with the facts, Defendant now seeks to waste time with wild guesses exonerating itself from any wrongdoing.

Defendant fought to obtain the C.R. England file but apparently did not examine its contents with any level of attention. It identified no witness from C.R. England who will testify to rates of pay for various positions, nor did it seek any further discovery on this point. Mr. Deuschle's continued rate of pay had nothing to with his completing training (which the documents Defendant sought and obtained from C.R. England show); rather, it corroborates Mr. Deuschle's testimony that he left C.R. England seeking a higher rate of pay.

Defendant should explain itself with evidence, not speculation. And arguing that Mr. Deuschle failed to finish training at C.R. England—to say nothing of whether that belief played

any role in Werner's decision not to hire Mr. Deuschle—is little more than an after-the-fact invention.

The Court should therefore grant Plaintiffs' motion.

**14.      Defendant agrees that evidence or argument regarding when and how Mr. Deuschle contacted or retained counsel in this matter, and the terms of their representation agreement, should be excluded.**

Plaintiff moved to exclude evidence or argument regarding when and how Mr. Deuschle contacted or retained counsel in this matter, and the terms of their representation agreement. Defendant does not oppose the motion, and the Court should therefore grant it.

**15.      Evidence or argument regarding deaf individuals in non-trucking positions should be excluded.**

Werner argues it cannot safely accommodate deaf truck drivers in over-the-road training because of the alleged danger of providing accommodations while training. The reasonableness of an accommodation for deaf trainees is thus specific to the student driver position, and evidence of Werner's employment of deaf individuals in non-trucking positions is irrelevant because they do not have to complete over-the-road training. Deaf individuals in non-trucking positions therefore have no bearing on any claim at issue. Fed. R. Evid. 401.

The evidence is also likely to cause confusion and mislead the jury because it conflates the narrow issue of the reasonableness of accommodations for over-the-road training with the broader issue of employing deaf individuals. For these reasons, Plaintiffs' motion should be granted.

**16.      Werner should be held to its stated position and not allowed to argue there are safety concerns beyond those identified in the Pretrial Order.**

Defendant has stipulated that the "only part of its truck driving job that [it] claims Andrew Deuschle could not perform, with or without accommodation, at the time he applied to

9

Werner is the trainer-observed over-the-road component of its student driver program (now known as the "placement driver program"), where a trainer rides along with a student driver for observation and training." Pretrial Order, Doc. 298, p. 3. In accordance with this stipulation, Plaintiffs' Motion asks the Court to exclude argument regarding any other safety concern as reason for Mr. Deuschle's failure to hire. In its objection to this motion, Defendant summarily asserts that Plaintiffs' motion goes "considerably beyond that stipulation" without providing any explanation. Plaintiffs cannot meaningfully respond to this argument.

Importantly, Plaintiffs' motion does not downplay Defendant's safety concerns. And Defendants excerpt Jamie Maus's deposition in a blatantly misleading way. Ms. Maus's answer was in response to a question asking, "And would be – any changes to the training program be undermining the essence of your business operation, or just some changes?" Doc. 246-2, Maus Depo. 164: 23-25. In this context, the response "and is that all?" was not meant to minimize Ms. Maus's concerns but was instead directed at ascertaining whether any additional changes to the training program would undermine the essence of Werner's business operation.

Regardless, Defendant has stipulated to the fact that it is only contesting Andrew Deuschle's ability to safely complete the trainer-observed over-the-road training. Any suggestion that deaf drivers are unsafe for some other reason is a bald attempt to prejudice the jury and expand the arguments beyond the position Werner has taken with the Court. The Court should hold Werner to its word and exclude argument regarding safety concerns beyond Werner's agreement.

> **17.    Mr. Deuschle had no obligation—and no opportunity—to propose accommodations at the time of his application; the Court should disallow any argument to the contrary.**

The law does not require Plaintiff to read minds. Defendant never gave Mr. Deuschle a reason for rejecting his application until he filed his charge. Defendant barely communicated with him during the hiring process at all, and pointedly avoided giving him any reason for his rejection. Defendant also never told Mr. Deuschle his disability prevented training, much less shared any information about the nature of that training. So even if Mr. Deuschle had some obligation to propose accommodations in certain circumstances, Defendant does not explain how he could have done so here. Nonetheless, Werner argues Mr. Deuschle "had an obligation to request and identify accommodations that could enable him to safely complete the placement driver program"—a program nobody told him about and which Werner never described until Mr. Deuschle filed his charge. Def. Br. in Opp. to Pl. Mot. in Limine, Doc. 307, at 15.

"[B]oth common sense and basic fairness command that, when an employer knows of an impairment, concludes that the impairment precludes an employee from performing the essential functions of the job, and, in fact, considers accommodation, an employer cannot escape liability merely because the employee, having been told no accommodation was possible, fails to request accommodation." *Barnes v. Northwester Iowa Health Center*, 238 F.Supp.2d 1053, 1088 (N.D. Iowa, 2002) (addressing a failure to accommodate claim). Here, Defendant never even told Mr. Deuschle the company did not believe it could accommodate his disability. It is disingenuous at best to suggest that Mr. Deuschle should have volunteered all possible accommodations for an unlimited number of possible job duties without any clue from Defendant about what those duties may be.

None of the cases Defendant cites aids its argument either. All concern failure to accommodate claims, not the disparate treatment claim Plaintiffs bring. *Compare* 8th Cir. Civ. Jury Instr. 9.40 (disparate treatment) *with* 8th Cir. Civ. Jury Instr. 9.42 (failure to accommodate).

And none address a failure to hire claim like Plaintiffs'. They thus deal with employment situations where the employee was already performing the job and aware of its requirements. Not the case here.[1]

For these reasons, the Court should grant Plaintiffs' motion.

### 18. The Court should prohibit Defendant from using the studies/reports relied on by Plaintiffs' expert witnesses for any purpose other than impeachment.

Plaintiffs ask the Court to prohibit Defendant from offering the studies/reports relied on by the parties' expert witnesses as evidence for any purpose other than impeachment at trial, because the studies are hearsay and will cause confusion, mislead the jury, and unfairly prejudice Plaintiffs. Defendant objects on the grounds that the studies are not hearsay and are admissible for any purpose because Plaintiffs' expert witness relied on them.

Admitting the studies for any purpose will cause confusion and prejudice the Plaintiffs, because they include evidence regarding the broader issue of deaf driving in general. Because the safety of deaf driving in general is not at issue, presenting this would only prejudice and scare the jury about an issue not before the Court. Moreover, the studies are hearsay, and expert reliance on the studies does not convert them to non-hearsay.

Experts are allowed to rely on "otherwise inadmissible hearsay" in formulating their opinions, but experts "who would act as mere conduits for hearsay" should be excluded. *In Re*

---

[1] Even under a failure to accommodate analysis, Plaintiff-Intervenor was not required to guess at what job duties required accommodation.

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3).

*RFC & ResCap Liquidating Tr. Litig.*, No. 13-CV-3451 (SRN/HB), 2018 WL 4489685 (D. Minn. Sept. 19, 2018) (citing *Williams v. Illinois*, 567 U.S. 50, 80 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012)). It follows that hearsay relied upon in the formulation of an expert's opinion does not become non-hearsay simply because of the expert's reliance. Thus, the fact that Plaintiffs' expert considered the studies in formulating his opinion does not render them non-hearsay and admissible for any purpose. Rather, the studies are hearsay properly relied upon by an expert that may not be admitted by using the expert as a conduit for hearsay.

In facing the "apparent contradiction" between permitting experts to rely on inadmissible hearsay in formulating their opinions and the inadmissibility of this hearsay, courts in the Eighth Circuit have "reconciled the issue by allowing an expert to testify about facts and data outside of the record for the limited purpose of exposing the factual basis of the expert's opinion. Effective cross-examination can then highlight the weaknesses in the expert's opinion.*" Brennan v. Reinhart Institutional Foods*, 211 F.3d 449, 451 (8th Cir. 2000). "Obviously, it is helpful when trial courts instruct juries as to the limited applicability of the hearsay evidence by informing the jury that the hearsay is inadmissible as substantive evidence to prove the truth of the fact asserted." *Id*. (citing *South Cent. Petroleum, Inc. v. Long Bros. Oil Co.*, 974 F.2d 1015, 1019 (8th Cir. 1992)). To resolve this issue, this Court should only permit Defendant to use the studies to impeach and ascertain the factual basis of the expert's opinion.

Further, Defendant cites Fed. R. Evid. 803(18) to establish that the studies are not hearsay. However, Fed. R. Evid. 803(18) on its face only applies to learned treatises, periodicals, or pamphlets, of which the studies are not. Even assuming the studies do qualify as a learned treatise, periodical, or pamphlet, Fed. R. Evid. 803(18) expressly provides that such a statement may only be read into evidence and cannot be received as an exhibit. Accordingly, should the

Court agree that Fed. R. Evid. 803(18) applies, the Court should only permit the Defendant to read the studies into evidence. In this instance, Plaintiffs also request the Court to instruct the jury regarding the studies' limited purpose of presenting the factual basis for the expert's opinion. *See Olson v. Ford Motor Co.*, 410 F. Supp. 2d 855, 865 (D.N.D. 2006) ("[T]he Court will give the jury a limiting instruction to the effect that such evidence is admissible only for the limited purpose of presenting the factual basis for the expert's opinion.").

For these reasons, the Court should grant Plaintiffs' motion to exclude the use of the studies and reports for any purpose other than impeachment.

**19.   Because the validity of the FMCSA hearing exemption, the hearing-exemption program, and the process by which Mr. Deuschle obtained his FMCSA hearing exemption is not at issue, any evidence or argument to the contrary should be excluded.**

Defendant continues to raise an argument raised and dealt with in Summary Judgment: that the FMCSA did not require Mr. Deuschle and others to follow proper procedures to obtain hearing exemptions (in fact Defendant also seeks to argue that Mr. Deuschle never actually received an exemption in 2014, see No. 20 below). This is nothing more than an attempt to broaden the issue from Defendant's observed over-the-road training, to the Hearing Exemption program and safety of deaf drivers.

Defendant clearly takes issue with deaf people generally, but Defendant has limited the issues here. And while Defendant may disapprove of the existence of the hearing exemption, including how the FMCSA awards them, this is an inappropriate forum to litigate those issues. Hearing exemptions are published for notice and comment, where any interested party can raise an objection to a particular exemption, and the program itself is subject to the provisions of the Administrative Procedure Act. As the Court noted at Summary Judgment, "Werner is trying to opt out of an established program operating within federal safety regulations. If Werner wants to

challenge the wisdom of the current federal regulatory regime, there are procedures for that. But the regulations as they stand provide Werner with no safe harbor for disability discrimination." Doc. 292 at 8.

Mr. Deuschle sought and received a hearing exemption. He could not have attended driver training school or worked for C.R. England without it. provided everything required and jumped through all the required hoops to obtain his Hearing Exemption. So while Defendant may argue it has concerns about whether exemption holders can complete its training program without distraction, the lawfulness of the hearing exemption generally is beyond the scope of this litigation.

The Court should therefore grant Plaintiffs' motion.

### 20. Evidence or argument regarding whether Mr. Deuschle actually had a hearing exemption at the time of his application should be excluded.

Defendant begins its opposition to Plaintiffs' Motion *in Limine* No. 20 with a straw man argument about what Mr. Deuschle produced during his application. Plaintiffs do not argue he presented the actual exemption during his application. Instead, Plaintiffs have pointed out that he produced the official letter from the FMCSA confirming that he had the exemption. Plaintiffs' Exhibit 42. Plaintiffs also have other evidence indicating that Mr. Deuschle had the Exemption. Defendant agrees that it received all of this information. And importantly, Defendant never told Mr. Deuschle that what he sent to them was insufficient.

Defendant also sidesteps by citing to the legal requirements that Mr. Deuschle have an exemption before he can lawfully drive big trucks across state lines. Again, Mr. Deuschle does not dispute that requirement.

But Defendant wants to go much further and argue—without any evidence—that Mr. Deuschle did not really have the Exemption at all when he applied. That is improper. Defendant

15

admits that it received a copy of his exemption confirmation letter on April 27, 2015. And Defendant does not dispute that Mr. Deuschle (1) attended truck driver training school and (2) worked for C.R. England before his application to Werner. Neither could have happened without a hearing exemption. Defendant even obtained those C.R. England's records on Mr. Deuschle. Nothing in them indicates what Defendant would now apparently, and preposterously, argue— that Mr. Deuschle forged his hearing exemption. Defendant's position is all the more remarkable because Mr. Deuschle's hearing exemption is and was a matter of public record. Before Werner finally rejected Mr. Deuschle's application, the FMCSA published notice of it in the federal register. Qualifications of Drivers; Application for Exemptions; Hearing, 80 FR 22768-01 (April 23, 2015). Further, it is undisputed that Defendant received a copy of Mr. Deuschle's hearing exemption during the course of this litigation. *See* Plaintiffs' Proposed Trial Exhibit 45, Deuschle 000059-000060.

Defendant should therefore not be permitted to raise the specter of illegal driving when they have no evidence of it, and when all the evidence is to the contrary. Defendant can make what they will of the fact that Mr. Deuschle did not give their recruiter the actual certificate during the application process; though, again, Defendant lacks any evidence of who—and therefore why—any decisionmaker rejected Mr. Deuschle's application. But it is improper, and violates Fed. R. Evid. 403, to allow wholly unsupported arguments that are highly prejudicial to Mr. Deuschle and the Plaintiffs' case.

The Court should therefore grant the Plaintiffs' motion.

### 21. Any opinion, finding, or proposed finding by the EEOC investigator should be excluded.

The letter at issue parrots Defendant's post-hoc defense that it did not hire Mr. Deuschle because he did not provide his hearing exemption. To justify its position, Defendant claims this

document contradicts Plaintiffs' position and implicates credibility. But Defendant points to nothing on the record to show Plaintiffs' position has changed; in fact, Defendant cites the EEOC's Complaint which notes Mr. Deuschle sent the letter, not the Exemption itself.

Plaintiffs' position, supported by the record, is that Mr. Deuschle had an FMCSA hearing exemption and was qualified for the position, and Plaintiffs have consistently acknowledged that Mr. Deuschle provided proof of the Hearing Exemption in the form of the FMCSA letter, not the exemption itself. There is, however, no evidence that sending the letter was actually the reason Defendant rejected Mr. Deuschle application or that anyone even realized the document was incorrect at the time of Mr. Deuschle's application. Defendant has not even identified a decision-maker. The EEOC letter cannot make that so.

Defendant also seeks to use this letter to imply issues with the nature and sufficiency of the EEOC's investigation, which is not at issue in this trial de novo of the issue of discrimination.

Finally, the letter was a preliminary recommendation. It explicitly invites additional information, which Plaintiff-Intervenor provided. And, obviously, the agency ultimately disagreed with the investigator's preliminary assessment. Assuming the Court admits this letter, Plaintiffs must have the opportunity to introduce evidence of the EEOC's investigation and determination to meaningfully respond to Defendant's argument. If Plaintiffs are required to introduce such evidence, the trial would devolve into another "mini-trial" regarding the investigator's knowledge and recommendation. A mini-trial on this trivial matter would constitute a significant waste of judicial resources and would only confuse the issues for the jury.

The Court should therefore grant Plaintiffs' motion and exclude the exhibit.

**22.    Previously undisclosed evidence or argument should be excluded.**

Defendant does not object to this motion except "to the extent it would prohibit Werner from using information, documents, or witnesses not previously disclosed for impeachment or to refresh a witness's recollection." Doc. 307 at 19 ¶ 22. It is unclear how "information" or "witnesses" could be properly utilized for impeaching a witness or refreshing a witness's recollection. Perhaps Defendant is seeking to retain the possibility of introducing witnesses not previously disclosed. Other than documents used for impeachment or to refresh a recollection (pursuant to FRE 612), the Court should sustain this motion.

**23.    Defendants agree that the term "bona fide occupational qualification," "BFOQ," and any other reference to such a theory or defense should be excluded.**

Plaintiff moved to exclude the term "bona fide occupational qualification," "BFOQ," and any other reference to such a theory or defense. Defendant does not oppose the motion, and the Court should therefore grant it.

Respectfully submitted,

*/s/ Meredith S. Berwick*
Meredith Berwick, MO Bar No. 64389
Equal Employment Opportunity Commission
1222 Spruce Street, Room 8.100
St. Louis, MO 63103
Phone: 314-798-1909
Fax: 314-539-7895
meredith.berwick@eeoc.gov

Joshua M. Pierson, KS Bar No. 29095
Lauren M. Wilson, FL Bar No. 1024850
Equal Employment Opportunity Commission
400 State Avenue, Suite 905
Kansas City, Kansas 66101
Phone: (913) 359-1807
Facsimile: (913) 551-6957
joshua.pierson@eeoc.gov
lauren.wilston@eeoc.gov

*Attorneys for Plaintiff EEOC*

*/s/ Brian East*
Brian East, TX Bar No. 06360800
(Admitted Pro Hac Vice)
Disability Rights Texas
2222 West Braker Lane
Austin, Texas 78758
Phone: 512-454-4816
Fax: 512-454-3999
beast@drtx.org

Lia Sifuentes Davis, TX Bar No. 24071411
(Admitted Pro Hac Vice)
University of Texas School of Law
Civil Rights Clinic
727 East Dean Keaton Street
D1800
Austin, Texas 78705
Phone: 512-232-7222
Fax: 512-232-0800
lia.davis@law.utexas.edu
*Attorneys for Plaintiff-Intervenor Andrew Deuschle*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 5360 words, which includes all text, including the

caption, headings, footnotes, and quotations, as determined by Microsoft Word for Office 365

ProPlus.

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2023, I electronically filed the foregoing document with
the Clerk of the Court using the CM/ECF system which sent notification of such filing to all
counsel of record.

*/s/ Meredith S. Berwick*