IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EQUAL OPPORTUNITY EMPLOYMENT COMMISSION,<br><br>    Plaintiff,<br><br>and<br><br>ANDREW DEUSCHLE,<br><br>    Intervenor Plaintiff,<br><br>vs.<br><br>WERNER ENTERPRISES, INC.,<br><br>    Defendant. | 8:18-CV-329<br><br>MEMORANDUM AND ORDER |

  This matter comes before the Court on both parties' motions in limine (filing 299, filing 303, filing 314). For the convenience of the parties, the Court has organized this Order into three categories of motions – the first of which are uncontested and will all be granted, the second of which will all be overruled without prejudice and may be reasserted as or if needed during trial, and the final on which the Court heard argument in open court on June 2, 2023.

## I. UNCONTESTED MOTIONS

  The plaintiffs' #4, 7, 8, 14, and 23 are uncontested and granted. The defendant's #11, 12, 13, 14, 15, 16, and 17 are uncontested and granted.

## II. OVERRULED WITHOUT PREJUDICE

Several of the plaintiffs' motions will be better adjudicated during the trial. These motions do not raise an issue of unfair prejudice and the Court does not consider it prudent to rule on these matters prior to hearing the evidence. The plaintiffs' #1, 5, 9, 10, 12, 13, 16, 20, and 22 are overruled without prejudice and may be reasserted if needed during the trial.

The Court will advise the parties that a lay witness is able to opine as to safety or financial liability only if proper foundation is laid. This is relevant to the plaintiffs' #9 and 12. Evidence which was not properly disclosed naturally cannot be admitted.

## III. OTHER MOTIONS

### PLAINTIFFS' MOTIONS IN LIMINE

#### Plaintiffs' #2: Failure to Mitigate After 2018

The disagreement for this issue is related to the defendant's motion #7 regarding backpay. For the reasons explained in more detail below, the jury will hear evidence on backpay. The plaintiffs' motion to exclude evidence regarding Deuschle's failure to mitigate or regarding offsetting damages from 2019 to the present is not contested and will be granted.

#### Plaintiffs' #3: Subsequent Employment

Related to the above motion regarding evidence of failure to mitigate, the plaintiffs seek to exclude evidence regarding alleged performance issues Deuschle had in jobs obtained after Werner rejected him in 2015, and plaintiffs want to exclude reasons why Deuschle left various subsequent employment from 2019 to the present, after the backpay period. Werner argues that if the plaintiffs "are permitted to offer evidence of Deuschle's post-application performance, training, accolades or awards, Werner should similarly be entitled to offer evidence of Deuschle's post-application performance issues."

2

Filing 307 at 5. The Court agrees with Werner, and will not allow either type of evidence. The relevance as to both is *minimal* with respect to the issues that *ought to be tried* in this case.

To the extent the plaintiffs seek to introduce evidence that Deuschle was hired by a trucking company which trained him, such evidence is relevant to whether Werner could have reasonably accommodated Deuschle. Werner can refute this by showing that Deuschle had additional qualifications he obtained after being rejected by Werner. As noted, the Court agrees that performance issues or reasons he left certain jobs after 2019 are not relevant. The plaintiffs' motion on this issue is granted in part.

### Plaintiffs' #6: Videos of Driving by Deaf Individuals

Based on the briefing provided by the party, the particular video at issue is a video of Victor Robinson, a deaf truck driver, driving with Don Olds, the plaintiffs' expert, created by the expert in preparation for this case. The video, allegedly, depicts the driver honking at a car in front of him because he did not hear emergency sirens. The plaintiffs argue this video is not relevant because it is not actually a video of Werner's training, and it is not Deuschle in the video. However, this video, and other videos relied on by the expert, are proper subjects for cross-examining the plaintiffs' expert. A jury will be able to sort out any dispute the parties have about what the video actually depicts. The plaintiffs' motion on this issue will be denied.

### Plaintiffs' #11: "Direct Threat" or "Undue Hardship"

The plaintiffs seek to exclude references to Werner's dismissed affirmative defenses, and ask that Werner be prohibited "from offering any evidence, statement, or argument that [Deuschle] would pose a direct threat of harm if employed or that his employment would create an undue hardship."

3

Filing 304 at 7. The plaintiffs further seek the Court to prohibit the use of the phrases "direct threat" and "undue hardship" on the basis of Fed. R. Evid. 403. The Court agrees, and such language or evidence will not be allowed. To the extent these phrases appear on exhibits, such as answers to interrogatories, these phrases should be redacted. However, Werner will still be able to put on evidence of safety or other concerns with deaf drivers. Some evidence which pertains to these issues may be ruled on subject to an appropriate objection at trial. The plaintiffs' motion in this respect will be granted.

### Plaintiffs' #15: Werner's Non-Driver Hearing-Impaired Employees

The plaintiffs argue that Werner's hiring of hearing-impaired employees for non-driver positions is not relevant and should be excluded. This issue is related to Werner's #2. If the plaintiffs introduce evidence of deaf people *not* hired by Werner, Werner is entitled to introduce evidence of deaf people it *did* hire.

The plaintiffs are seeking punitive damages against Werner, arguing that Werner has animus towards hearing-impaired and/or deaf people. The fact that Werner has hired deaf or hearing-impaired people for jobs other than truck driving is relevant to this issue, and is probative of whether Werner was motivated by safety concerns or by animus in denying Deuschle's application for employment. On this matter, the plaintiffs' motion is denied.

### Plaintiffs' #17: Obligation to Propose Accommodations

The plaintiffs seek to prevent Werner from arguing that Deuschle never told Werner ways that it could have accommodated him. Werner argues that the plaintiffs' "position is directly contrary to Eighth Circuit case law, which holds that an applicant has an obligation to request and identify accommodations that could enable the applicant to safely perform the essential

4

functions of the position." Filing 307 at 15 (citing *Powley v. Rail Crew Xpress, LLC,* 25 F.4th 610, 612 (8th Cir. 2022)). But this argument conflates a *failure to accommodate* ADA claim with a *disparate impact* ADA claim. *See id.* Failure to accommodate is not currently an issue in this trial, and the plaintiff had no obligation to propose accommodations, particularly when he was told his application was denied on the basis of missing paperwork. On this issue, the plaintiffs' motion is granted.

### Plaintiffs' #18: Expert Studies and Reports

Based on argument heard in open court, the parties appear to agree that the reports and studies relied upon by the plaintiffs' experts may only be used for cross-examination and impeachment. . . unless, of course, the "door is opened" on other evidentiary grounds. So, the motion is granted as to the admissibility of those reports and studies as substantive evidence.

### Plaintiffs' #19 and 20: FMCSA Hearing Exemption

The plaintiffs' #19 and 20 both concern the FMCSA hearing exemption – both as a process on its own and as Deuschle actually engaged in it. While the "regulations as they stand provide Werner with no safe harbor for disability discrimination," filing 304 at 11 (citing filing 292 at 8), Werner is able to have a higher standard of safety than the federal regulations. Werner may present evidence to the jury about any alleged deficiencies in the regulatory process of providing hearing waivers, both generally and as engaged in by Deuschle.[1]

---

[1] If Werner engages in this line of questioning, this opens the door for the plaintiffs to explain the rationale behind the waiver process, and the regulatory process by which the Department of Transportation created the rule. This would likely lengthen the trial. Caution should be exercised – there had better be some "meat on the bones" before entering into this line of inquiry.

5

Werner may contest the belief that a driver in possession of an FMCSA waiver is just as safe as any other driver by contesting the regulatory process. Further, *if proper foundation is laid*, Werner may question whether Deuschle actually obtained his exemption. On these issues, the plaintiffs' motion is denied.

### Plaintiffs' #21: EEOC "Admission"

The plaintiffs seek to exclude an August 2016 letter from the EEOC to Deuschle regarding Deuschle's alleged failure to provide certain documentation to Werner. The letter, according to Werner, is an "admission" that Werner did not hire Deuschle because he did not provide the proper paperwork. While the letter might have some relevance, the Court agrees with the plaintiffs that this evidence is likely to lead down an unnecessary rabbit hole regarding the EEOC's investigation into Deuschle and Werner. Werner has more than sufficient evidence, presumably the same evidence the EEOC reviewed before sending this letter, regarding Deuschle's missing paperwork. The Court finds the limited probative value of the letter is outweighed by a danger of wasting time, confusing the issues, and needlessly presenting cumulative evidence. So, the letter will be excluded, and the plaintiffs' motion will be granted, under Fed. R. Evid. 403.

### Plaintiffs' Supplemental: Victor Robinson

The plaintiffs intend to call Victor Robinson, a deaf truck driver. The plaintiffs will ask Robinson to testify about how he was trained. To challenge Robinson's credibility, Werner wants to inquire as to Robinson's safety record and employment issues. Werner asserts it wants to question Robinson about these issues not to raise questions about deaf drivers' overall safety, but to call into question Robinson's credibility and reliability regarding how safe his training was if he had gotten into a number of accidents.

Based on Fed. R. Evid. 403, the Court finds that the relevance and probative value, if any, of the subsequent trucking accidents is outweighed by the risk of confusing the issues, undue delay, and wasting time. Asking about the various accidents will devolve into examinations of each accident, who was at fault, what could have been done to prevent it, etc. Ultimately, the accidents (as proffered to the Court) have little relevance to the subject about which Robinson will testify – his personal experience and knowledge about how trucking companies train deaf drivers. Werner is welcome to inquire as to any accidents which occurred while Robinson was in training. Therefore, the plaintiffs' motion on this issue is granted.

WERNER'S MOTIONS IN LIMINE

Werner's #1: Witnesses' Subjective Beliefs of Discrimination

Relying on Rule 401, 403 and 701, and on some case law, Werner seeks to exclude statements by the plaintiff and by Werner employees. Werner cites cases suggesting that a plaintiff's "subjective beliefs and bare allegations" that he or she was discriminated against "are insufficient to establish" an ADA prima facie case. *Erenberg v. Methodist Hosp.*, 240 F. Supp. 2d 1022, 1031 (D. Minn. 2003).

But here, the plaintiff's subjective beliefs are not the only ones proffered. And the allegations are not "bare." Rather, the testimony of other employees of Werner supports the plaintiffs' claim that Werner intentionally and (potentially) maliciously discriminated against deaf drivers. The evidence is not unfairly prejudicial because it is coming from Werner's own employees, who are testifying as to their personal knowledge. This testimony would help the jury to understand how the employees felt about deaf drivers and how they felt about their own actions.

7

To the extent Werner seeks to exclude testimony because it is a "legal conclusion" that will "confuse the jury," this only justifies preventing the plaintiffs from specifically asking whether certain behavior was "discrimination" or "discriminatory." Allowing witnesses to opine as to whether certain behavior was "discrimination" might confuse the jury once they read the jury instructions—they may conflate the colloquial, common understanding of "discrimination" with the legal claim of "disability discrimination" as alleged in this case. The plaintiffs can inquire as to how people felt about (or viewed) certain behaviors, but may not ask whether certain behavior was discriminatory. (There are plenty of other ways to phrase such questions that do not literally implicate the legal issues in this case.)

### Werner's #2: Other Applicants

This issue is discussed above in the plaintiffs' #15. The plaintiffs seek to introduce other deaf applicants rejected by Werner. Werner seeks to exclude this evidence as irrelevant, unfairly prejudicial, a waste of time, and likely to cause juror confusion.

One issue in this case is whether Werner didn't hire Deuschle because he failed to turn in his paperwork, or whether that reason was pretextual and motivated by animus. Evidence of other deaf drivers, who may have not been hired for a variety of reasons, is relevant to this issue, and relevant to the punitive damages claim. Werner is welcome to identify any deaf individuals it did hire to rebut this evidence.

Werner further argues that these job applications and denials are hearsay. Assuming plaintiffs have a witness to introduce and authenticate this evidence, it is admissible and not hearsay because the applications are business records.

8

### Werner's #3: Stray Remarks

Werner seeks to exclude certain emails and chat messages where its employees make discriminatory remarks and admit that they do not hire deaf drivers. Werner claims these are "stray remarks," which are insufficient to establish discrimination. *Fitzgerald v. Action, Inc.,* 521 F.3d 867, 876-77 (8th Cir. 2008) (citing *Fisher v. Pharmacia & Upjohn,* 225 F.3d 915, 922 (8th Cir. 2000)). However, stray remarks are neither irrelevant nor inadmissible. *Id.* These statements are relevant to the punitive damages claim and to the disparate treatment claim. To the extent Werner wants to exclude discriminatory remarks made by its employees because they are "stray remarks," the Court is unpersuaded.

However, some of the remarks may create unfair prejudice which outweighs their probative value and may be excluded under Fed. R. Evid. 403. For example, emails where Erin Marsh is the recipient, but is not actually reacting or saying anything, are not particularly probative of top-level Werner officials' views of hearing-impaired people, and are likely to inflame the passions of the jury. Further, some emails are from 2018, years after Deuschle was denied employment. The timing of these statements further limits their probative value.

With this in mind, at this point, Werner's motion will be overruled without prejudice to be reasserted at trial. The Court will likely sustain any objection to statements where the content, context, and timing do not evidence discrimination from high-level Werner employees sufficiently related to Deuschle, either by the timing of the statements or the identity of the declarant.

9

### Werner's #4: Other Trucking Companies

Werner seeks to exclude all evidence of other trucking companies' policies regarding hearing-impaired drivers as irrelevant. The plaintiffs seek to introduce deposition testimony from five other trucking companies which train deaf drivers. Evidence of other companies' training policies is relevant to the issue of whether Werner's refusal to train deaf drivers is reasonable.

Werner cites a Seventh Circuit Court of Appeals case, *EEOC v. Schneider Nat., Inc.,* 481 F.3d 507, 510 (7th Cir. 2007), for the unremarkable position that an employer "is entitled to determine how much risk is too great for it to be willing to bear," and "[t]he fact that another employer and . . . the worker himself are willing to assume a risk does not compel [an employer] to do likewise." But no one is compelling Werner to behave the same way as other companies. Evidence of how other companies process and train hearing-impaired drivers will be helpful to the jury in determining the reasonableness of Werner's actions. Werner may inform the jury that it is entitled to have a higher level of safety than other companies, but the jury will ultimately determine whether that decision is reasonable.

Werner argues the evidence compares other companies' 2021 policies to Werner's 2015 policies, which makes them irrelevant. The other companies' 2021 policies, however, are relevant because these policies have a tendency to show a material fact, the reasonableness of Werner's actions, is less likely. Werner had the opportunity to challenge the policies of its competitors on cross-examination and inquire as to those companies' 2015 policies, and Werner has designated testimony from these depositions for the jury to hear. Werner is not prejudiced, nor is the evidence irrelevant.

Werner also suggests that the five company policies offered by the plaintiffs are both too many and too few. Filing 302 at 12. These concerns are

overruled. While prejudicial to Werner, this evidence is not unfairly so, and will be admitted. Werner's motion on this matter is denied.

Werner's #5: Hearsay of Interpreter's Interpretation of Werner Statement

Werner seeks to exclude certain statements allegedly made to Deuschle by Dale Hunt, a recruiter at Werner, during a meeting at Deuschle's trucking school. Deuschle was aided by an ASL interpreter in the meeting. Werner argues the statements made to Deuschle by the interpreter, interpreting Hunt's statements, are inadmissible hearsay.

The interpreter does not present a hearsay issue. It is contrary to public policy to treat statements by a party opponent differently because the party is deaf. *Germano v. Int'l Profit Ass., Inc.,* 544 F.3d 798, 804-05 (7th Cir. 2008). A translator, and by analogy an interpreter, does not create an additional level of hearsay. *U.S. v. Cordero*, 18 F.3d 1248, 1253 (5th Cir. 1994) (quoting *U.S. v. Lopez,* 937 F.2d 716, 724 (2d Cir. 1991)); *see also U.S. v. Romo-Chavez*, 681 F.3d 955 (9th Cir. 2012). There is no evidence of bias or other impropriety on the part of the interpreter. The plaintiff points out the interpreter was not hired by Deuschle, but by the driving school, which is required by law to provide qualified ASL interpreters. Filing 309 at 16. Werner relies on nothing but speculation that the interpreter was biased. This does not warrant excluding the alleged statements. "The fact that a conversation was had through an interpreter affects the weight, but not the competency, of the evidence," and Werner is welcome to challenge the statements on cross-examination. *Germano,* 544 F.3d at 802.

Werner alleges Deuschle has made "wildly inconsistent reports regarding what was allegedly said by Dale Hunt." Filing 320 at 9. But this goes to the credibility of *Deuschle,* and does not warrant exclusion of the statements because they were relayed to Deuschle by an ASL interpreter. This is the same

as any inconsistent testimony from a party. The fact that Deuschle learned of Hunt's alleged statement through an interpreter is *part* of that analysis, but does not merit exclusion. Credibility is an issue for the jury. Werner's motion on this issue is denied.

Werner's #6: Subsequent Remedial Measures

Werner argues that the plaintiffs' exhibits showing Werner's current policies regarding its application process are excludable subsequent remedial measures under Fed. R. Evid. 407. The plaintiffs argue this evidence goes to "feasibility of precautionary measures," an exception to Rule 407.

In 2015, Werner required at least six months of on-the-road experience in order to bypass the placement driver position. Deuschle had five months of experience. Later, Werner changed its policy, and now requires only three months of experience to bypass the training position. The plaintiffs assert this change undermines Werner's assertion that the placement driver position was a business necessity, and seek to admit evidence of this change. The plaintiffs will be able to do so. It speaks to the feasibility of whether Werner could have safely trained Deuschle, and whether the over-the-road aspect of Werner's placement driver training program was an "essential function" of employment.

Werner's #7: Back Pay Evidence

Werner seeks to exclude all evidence of back pay, arguing that back pay is an equitable issue for the Court, and not a jury issue. Werner is correct. Per 42 U.S.C. § 1981a(b)(2), "Compensatory damages awarded under this section shall not include backpay." An award of back pay in an ADA case is equitable relief, even though monetary in nature. *See Pedigo v. P.A.M. Transp., Inc.*, 60 F.3d 1300, 1303 (8th Cir. 1995); *see also Maitland v. Univ. of Minnesota*, 155 F.3d 1013, 1018 (8th Cir. 1998). As such, it is a question for the Court, not the

jury. *See Pals v. Schepel Buick & GMC Truck, Inc., 220 F.3d 495, 500 (7th Cir. 2000)*. The Court may, however, try the issue to an advisory jury. Fed. R. Civ. P. 39(c); *see Gragg v. City of Omaha, 20 F.3d 357, 358 (8th Cir. 1994)*.

The Court agrees that whether and in what amount of backpay Deuschle is entitled to is an issue for the Court to decide. But in the interests of judicial efficiency, and because the jury will need compensatory damages on which to base (any potential) punitive damages, the jury will hear evidence and be instructed on back pay. The jury's verdict will be advisory on this issue. Werner's motion is therefore denied.

### Werner's #8: Future damages, future emotional distress

Per 42 U.S.C. § 1981a(b)(3), a plaintiff may be awarded compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." Werner seeks to prevent Deuschle from recovering for "future mental anguish" because it was not pled. Deuschle did in fact plead "ongoing mental anguish," and will be able to adduce evidence in that regard. However, per the plaintiffs' statement in open court, Deuschle is not seeking damages for "future mental anguish" in perpetuity. Werner's motion, as the Court understands it, is overruled (based on the above), and the Court will address any other objections as to "mental anguish" as needed, at trial.

### Werner's #9: Other Litigation

Per the arguments heard in open court, the parties agree that neither will reference other litigation against Werner. One exception would be an alleged statement by Victor Robinson to a Werner representative, related to Robinson's litigation in the member case. The Court will, if necessary, rule on any objections at trial when and if any such evidence is proffered.

<u>Werner's #10: Werner's Financial Status</u>

The parties agree that evidence of Werner's financial status and net worth may (at some point) become relevant to punitive damages. Werner has asked that the Court exclude references to Werner's net worth in voir dire and opening statements. Further, the plaintiff should be prevented from introducing this evidence until such time the Court determines that the plaintiff has produced sufficient evidence warranting a punitive damages instruction. The Court will grant this motion. Prior to presenting evidence of Werner's financial status and net worth, the plaintiffs, outside the presence of the jury, must seek the Court's determination on the issue of punitive damages.

IT IS ORDERED:

1. The plaintiffs' motion in limine (filing 303) is granted in part and denied in part.

2. The plaintiffs' supplemental motion in limine (filing 314) is granted.

3. The defendants' motion in limine (filing 299) is granted in part and denied in part.

Dated this 3rd day of June, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge